# SUPERIOR COURT OF BALTIMORE CITY

Filed March 30th, 1895.

T. EGERTON HOGG

VS.

PHOENIX INSURANCE COMPANY OF BROOKLYN.

*William Pinkney Whyte* and *Andrew C. Trippe* for plaintiff.

*Bernard Carter, W. Starr Gephart* and *Charles Carter* for defendant.

RITCHIE, J.—

Opinion of Judge Ritchie on the prayers in the above entitled cause.

First as to the right of the plaintiff to maintain this suit.

If it is provided in a policy of insurance, either in express terms or by necessary implication, that in case of a disagreement as to the loss, there shall be an appraisement, and that no loss will be payable, and no suit will lie until an award has been made, then appraisal and award constitute a condition precedent to the institution of any suit. But such a condition ought to appear in express terms, or by clear implication. It is claimed, with great force of argument by the defendant, that there is in this policy such a condition precedent, and that this suit has been prematurely brought. But for a well established rule of construction, expressly recognized by the Supreme Court in 95 U. S., that the policy, having been prepared by the defendant itself, must, in case of ambiguity, be construed most strongly against the company, there would be some difficulty in answering the argument made on behalf of the defendant. In construing this policy, the circumstances under which this question is raised may properly be referred to. This fire occurred on September 5th, 1892; notice was given on the 6th, proofs of loss were duly submitted, plans and specifications of the building were furnished to the company at the request of its adjuster, and also the certificate of a neighboring magistrate, in pursuance of a similar request. The defendant's adjuster then demanded plans and specifications of the building *as it existed immediately before the fire*, and also a book in possession of a certain Preston, and a paper in the hands of Mr. Trippe, said to contain a long list of defects in the building and in its construction as of the time of the fire. On failure of plaintiff to comply with these further demands, the adjuster seems to have suspended all action on his part toward making out his estimate of the loss, and up to the time of instituting suit in June, 1893, the company, while objecting to the plaintiff's estimate of his loss had not submitted any estimate of its own, nor had there been any demand on its part for an appraisement of the loss, nor any refusal by plaintiff to submit to one.

The condition of appraisement always rests on a precedent disagreement. Whether objection to the plaintiff's valuation without any estimate on the part of the company (to which it is possible the plaintiff may have

agreed) completes the disagreement; and if not, what effect the inactivity of the defendant for six months after proofs submitted, and its failure to do what was necessary on its part to bring about the disagreement, would have on the provision for appraisement, as a waiver, need not be passed on. However this may be, this policy provides that no suit shall be sustainable unless brought within twelve months after the fire, and if this suit must be dismissed as prematurely brought, the practical result would be precisely the same as if the Court were to declare a forfeiture of the policy, because, in view of the fact that the period of limitation has expired, it would not be possible for the plaintiff to sustain another suit. While these facts cannot affect the question whether the policy contains this condition precedent, or not, I think they may properly remind the Court of the importance of enforcing the rule of strict construction as against the defendant—the rule that if this policy is equivocal or ambiguous in its terms, its construction must be such as is most favorable to the insured. When I come to look at the terms of this policy I do not find, either in express terms, or by necessary implication, under the rule of construction by which I am controlled, the condition precedent which has been insisted upon. It is a policy to insure the plaintiff against direct loss from fire to this dwelling; such loss to be measured by the actual cash value of the property at the time it was destroyed. It provides that it shall be ascertained by agreement between the parties, or if they disagree there shall be an appraisement, but I do not find, on considering the whole policy, that such appraisement, in case of disagreement, is absolutely a condition precedent to the institution of a suit. I think I may properly say here that if an insurance company intends to insert in its policy such a condition, it ought to be done plainly and in express terms, and in such a way as that the insured may readily apprehend it. I do not think that a condition of this kind ought to be inserted in such a way as that it cannot be found except by taking this, that, and the other provisions of the policy, and then, by putting them together, thus develop a condition precedent by construction.

If, however, such condition is in this policy, I must so construe it, whether it is plainly expressed, or whether it is to be found in such implications as that only a professional mind would be likely to detect it. But, as I have said, this policy, in my judgment, is equivocal and ambiguous on the point in question.

The defendant claims that this condition is to be found by taking together the provision already mentioned as to appraisement, the provision as to payment of loss, beginning at the ninety-third line, and the provision as to bringing suit, beginning at line 106. The provision as to payment is viz: "And the loss shall not become payable until sixty days after the notice, ascertainment, estimate and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers *when appraisal has been required.*" Here, to my mind, is a clear case of ambiguity. "Required" by whom? "Required" by what? It is argued by the defendant that this means, required *by the exigency,* required by the preceding provisions of the policy. Very well, that is one construction, and a reasonable one from the standpoint of the company; but, at the same time, I think that any one reading this provision, would naturally fill up the uncompleted sentence, "when appraisal has been required," by adding the words *by either party.* It is clearly capable, I think, of this latter construction just as well as it is of the other—and if the latter construction be correct, then, by implication, the appraisement must first be called for by one of the parties. The policy being equivocal, it is to receive the construction most favorable to the party insured.

Coming now to the provision as to bringing suit. It does not provide that no suit shall be sustainable *until an award has first been had.* It reads as follows: "No suit or action on this policy, for the recovery of any claim, shall be sustainable in any Court of law or equity *until after full compliance by the insured with all the foregoing requirements.*" It is by coupling this provision with the others alluded to, that the defendant claims to work out a condition of precedent. But this does not make an award a condition precedent. In requiring full compli-

ance by the insured with aforegoing requirements, this policy cannot be taken to require of him compliance with requirements, the fulfilment of which does not rest personally and entirely upon him. He must first give notice, furnish proofs, comply with proper demands, etc., but appraisement, or the appointment of two appraisers, could not be the subject of a requirement resting individually and entirely upon him. No appraisement could be had without the joint action of both. If the company had demanded an appraisement, submission to appraisement would then have been a requirement of him, compliance with which he would have to show, but in the absence of any demand by the company, there is nothing in the policy which requires him to show an appraisement, or demand for one, before suit.

The suit being sustainable, there are, referring to the evidence, practically only two questions for the jury, there being no controversy over the fact of a total loss; first, what was the actual cash value of this property at the time it was destroyed? And second, did the plaintiff in his proofs make oath to an intentional overvaluation of the property as it was at the time of the fire?

With regard to the demand for plans and specifications, I think it was reasonably complied with. When these are called for under the policy, I do not think that the insured, in case they have not been followed strictly, is required to furnish with them an account of all the particulars in which there has been a failure to carry them out, or of defects in material or construction, or of conditions subsequently resulting from such failure or bad workmanship, such as unseasoned timber, misplacement of girders, cracking plaster, warping, or sinking floors, etc. So that when the plaintiff furnished the plans and specifications in question, I think he sufficiently complied with the terms of the policy.

As to the demand made for the book which Mr. Preston had, and the list, in Mr. Trippe's possession, which contained an enumeration of defects in materials and faults in construction, and the consequences therefrom, I cannot find any provision in the policy which authorized the company to demand their production. There is a provision that the plaintiff when required

so to do, shall produce for examination all books of account, bills, invoices and vouchers, but this does not embrace the demand in question. Even assuming that Col. Hogg knew of this book and of this list, and had control over them, I find no provision in the policy which required him to produce them. It further appears from the evidence that when this demand was made the defendant had in its possession a copy from the stenographic notes of all the testimony in the Heise & Bruns case, which, as appears from the testimony in this case, embraced at least the greater part of the contents of this book and list, and if the defendant needed more information as to the actual condition of the house at the time of the fire, it had authority under its policy to subject the plaintiff to examination under oath, and could have exhausted his knowledge on the subject. I therefore cannot grant the defendant's prayer in this connection.

The first question then for the jury is, what was the actual cash value of this dwelling at the time of the fire? This does not mean, what did it cost Col. Hogg to build it. Evidence of what it did cost him was admitted, because the Court thought it proper, as an element, as something that might help the jury, in ascertaining what was the then actual cash value. But the question is as to the then value, not the cost. To illustrate what I mean, a given house may have cost $100,000, but if for one reason or another, at the time of the fire, its cash value is not more than $20,000, then this amount is all that the company could be held liable for. Nor is the loss to the plaintiff, or the damages done, by the fire, the measure of damages. Such loss or damage might exceed the total insurance. In this connection comes an important issue by the defendant, that is, as to the alleged over-valuation of this property as of the time of the fire. Col. Hogg, under affidavit, in submitting the proofs of loss, declared that its cash value at the time of the fire was $73,181.53. Now there is a provision in the policy that it shall be void in case of any fraud or false swearing by the insured touching any matter relating to said insurance or the subject thereof, whether before or after the loss, and the defendant has offered evidence tending to show that this amount

was largely in excess of the value of the property and that the plaintiff knew it so to be. If the jury should find that this amount was an excessive valuation, and that the plaintiff knew it so to be when he made his affidavit, and find that he swore to this valuation for the purpose of deceiving the company as to the value of the house and the extent of his loss, then he is not entitled to recover anything and the verdict in such a case should be for the defendant. But if the jury find for the plaintiff, then he is entitled to recover not one twentieth of the damage caused by the fire, or of the loss to the plaintiff, or of the cost of the building, but one-twentieth of what the jury may find was the actual cash value of the building so destroyed at the time of the fire, not to exceed one-twentieth of the total insurance placed upon it by all the companies. I will instruct the jury in accordance with these views.